[Cite as *State v. Leffel*, 2019-Ohio-1840.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# ASHTABULA COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2017-A-0085** |
| - vs - | : | |
| MARISA ANN LEFFEL, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Ashtabula County Court of Common Pleas, Case No. 2017 CR 00162.

Judgment: Affirmed

*Nicholas A. Iarocci,* Ashtabula County Prosecutor and *Shelley M. Pratt*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, Ohio 44047 (For Plaintiff-Appellee).

*Michael A. Partlow*, 112 S. Water Street, Suite C, Kent, Ohio 44240 (For Defendant-Appellant).

THOMAS R. WRIGHT, P.J.

{¶1}   Appellant, Marisa Leffel, appeals her involuntary manslaughter conviction and sentence following a jury trial.  We affirm.

{¶2}   Leffel was originally charged with three counts of involuntary manslaughter, corrupting another with drugs, aggravated trafficking, and trafficking heroin.  All six counts are based on Leffel's delivery of drugs to Eric Andrus, which resulted in his fatal overdose on January 12, 2016.  A jury found her guilty of all counts.

{¶3} The trial court merged all counts for sentencing, and the state elected to proceed with sentencing on count one, involuntary manslaughter, a first-degree felony in violation of R.C. 2903.04(A) predicated on Leffel's violation of R.C. 2925.02(A)(3), corrupting another with drugs. She was sentenced to ten years in prison. We granted her motion for a delayed appeal.

{¶4} Leffel raises four assigned errors:

{¶5} "[1.] The jury's verdict convicting the appellant are not supported by sufficient evidence.

{¶6} "[2.] The appellant's convictions are against the manifest weight of the evidence.

{¶7} "[3.] The trial court erred and abused its discretion by sentencing appellant to the maximum penalty allowed by law.

{¶8} "[4.] The trial court committed plain error by failing to give the jury instruction contained in Ohio Jury instructions concerning accomplice testimony."

{¶9} We collectively address her first and second assigned errors challenging the sufficiency of the evidence and claiming that her conviction is against the manifest weight of the evidence. Leffel's defense theory was that she and Spurlock brought drugs into the condo that night with no intent to sell them, but that Andrus stole their drugs and money without their knowledge, which they did not learn about until after leaving. She argues that she did not voluntarily supply him with any drugs.

{¶10} Upon reviewing a record for sufficiency, "'[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable

2

doubt.' *State v. Jenks,* 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, following *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). '[T]he weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts.' *State v. DeHass,* 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph one of the syllabus." *State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, 9 N.E.3d 930, ¶146.

{¶11} "In viewing a sufficiency of the evidence argument, the evidence and all rational inferences are evaluated in the light most favorable to the prosecution. *See State v. Goff*, 82 Ohio St.3d 123, 138, 694 N.E.2d 916 (1998). A conviction cannot be reversed on grounds of sufficiency unless the reviewing court determines that no rational juror could have found the elements of the offense proven beyond a reasonable doubt. *Id.*" *State v. Carter*, 7th Dist. Mahoning No. 15 MA 0225, 2017-Ohio-7501, 96 N.E.3d 1046, ¶95, *appeal not allowed,* 151 Ohio St.3d 1515, 2018-Ohio-365, 90 N.E.3d 952.

{¶12} When "determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses, and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997); *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶119.

{¶13} "* * * But the weight and credibility of evidence are to be determined by the trier of fact. * * * The trier of fact is free to believe all, part, or none of the testimony of any witness, and we defer to the trier of fact on evidentiary weight and credibility issues

3

because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility. * * *." *State v. Miller*, 4th Dist. Hocking No. 18CA3, 2019-Ohio-92, ¶27-28.

{¶14} A finding that a conviction is not against the manifest weight of the evidence necessarily encompasses a sufficiency finding as well. *State v. Skeins*, 11th Dist. Trumbull No. 2017-T-0018, 2018-Ohio-134, ¶10, citing *State v. McGowan*, 7th Dist. Jefferson No. 14JE37, 2016-Ohio-48, ¶4.

{¶15} R.C. 2903.04(A), involuntary manslaughter, prohibits a person from causing "the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony."

{¶16} "The term 'proximate result' used in R.C. 2903.04, involuntary manslaughter, mandates that a person will be criminally responsible for causing the death of another only where the consequences of his conduct are direct, normal, and reasonably inevitable when viewed in the light of ordinary experience." *State v. Sabatine,* 64 Ohio App.3d 556, 560, 582 N.E.2d 34 (8th Dist.1989); *State v. Losey,* 23 Ohio App.3d 93, 95, 491 N.E.2d 379 (10th Dist.1985) ("'[P]roximate result' bears a resemblance to the concept of 'proximate cause' in that defendant will be held responsible for those foreseeable consequences which are known to be, or should be known to be, within the scope of the risk created by his conduct.").

{¶17} Involuntary manslaughter is a crime of transferred intent. *Stanley v. Turner*, 6 F.3d 399, 402 (6th Cir.1993), *citing State v. Losey,* 23 Ohio App.3d 93, 491 N.E.2d 379 (1985). Thus, the requisite culpable mental state is the same as the culpable mental state of the underlying offense. *Id.*

{¶18} Here, the predicate felony is corrupting another with drugs, in violation of R.C. 2925.02(A)(3)(C)(1), which states:

{¶19} "(A) No person shall knowingly do any of the following:

{¶20} "* * *

{¶21} "(3) By any means, * * * furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person, or cause the other person to become drug dependent;

{¶22} "* * *

{¶23} "(C) Whoever violates this section is guilty of corrupting another with drugs."

{¶24} "Black's Law Dictionary * * * defines 'furnish' to mean '[t]o supply, provide, or equip, for accomplishment of a particular purpose.'" *State v. Schwab*, 4th Dist. Athens No. 12CA39, 2014-Ohio-336, ¶9.

{¶25} On January 11, 2016, Andrus met with his probation officer and tested negative for drugs. He was coherent and later had dinner with his mother at approximately 7 p.m. She left him alone for the night inside Andrus' father's condo, which was locked from the outside. Only his mother, father, and sister had access. Andrus' parents are divorced but were working together to help him maintain his sobriety after his misdemeanor drug abuse and theft convictions. His mother received a call on January 12, 2016 that her son had passed away. He was 24 years old.

{¶26} Andrus' phone was in his mother's name and she gave police consent to search it. He had contacted approximately 14 different people that day. The review of his phone showed that he was Facebook messaging Shawna Spurlock searching for drugs. He asks her to help him find some "H" or some "boy," slang for heroin. Andrus

5

then messages Spurlock telling her that he has cash and feels sick. He also notes that he would be ok with "speed."

{¶27} Spurlock testified that she and Leffel were dating for a while, engaged to be married, and living with Leffel's mother. The police identified Spurlock as a suspect upon examining her message history with Andrus.

{¶28} Spurlock initially gave conflicting versions of that night to police, which were before the jury. She first told police that she and Leffel drove to "hang out" with Andrus because he was dope sick. And while they led Andrus to believe they were bringing him drugs, they did not. They climbed up the balcony to help him. Spurlock then changed her story and said they did bring drugs into his condo, but that they did not give Andrus any. Spurlock explained they each used their own drugs before leaving his condo, and after they left, they realized Andrus had stolen their drugs.

{¶29} Spurlock testified as to her final version of the night in question at trial, and admitted she had initially lied to police. Spurlock confirmed that Andrus was Facebook messaging her looking for heroin, and she instructed him to text her instead. Spurlock confirmed that she had used heroin earlier that day. Leffel had "white china" heroin, which Spurlock described as much stronger than other heroin she had used. In response to Andrus' numerous requests, Spurlock and Leffel drove to his condo to sell him heroin. Spurlock explained Leffel was also texting Andrus with Spurlock's phone and that Leffel and Andrus negotiated the amount and price of the drugs he was buying.

{¶30} Spurlock drove her car and when they arrived at the condo, Leffel got out for about 10 minutes to sell Andrus the heroin. Leffel came back to Spurlock's car yelling that he had robbed her. Leffel explained that she "stepped onto the balcony and * * *

handed him the dope. And he shut the sliding glass door," and "he never came back with the money."

{¶31} Spurlock pleaded guilty to corrupting another with drugs in exchange for her testimony at Leffel's trial. She was sentenced to four years in prison.

{¶32} The text and Facebook messages on Andrus' phone are consistent with Spurlock's trial testimony. Spurlock said that Leffel was using her phone to negotiate the exchange. One message asks him "how much" and "where to," and then states, "I'll give you the 10 sack, u gimme the 10 bucks * * * if you like it and want more then you can call me back, and I'll bring you more."

{¶33} At 11:39 p.m. a message from Spurlock's phone instructs Andrus to delete her number and messages and advises him to message Spurlock on Facebook when he wants more.

{¶34} Andrus' later text says, "I'm just trying to get high * * * I hit up like 20 ppl. Parents are trying to keep me clean." At 12:31 a.m., a message from Spurlock's phone to Andrus states she is almost there. At 12:39 a.m., his message to Spurlock says, "Was this a 5 sack lol cmon now," and her text response states, "Did you seriously just rob me?" Andrus' messages stop after that, but the messages from Spurlock's phone to his continued and consisted of threats to Andrus. Spurlock testified that Leffel sent him the threatening messages because he did not pay.

{¶35} Andrus did not answer his father's texts and calls the next morning. He had overdosed and died as a result of the combined effect of fentanyl and opiates.

{¶36} Leffel did not testify at trial. But she also spoke with police and her statement was admitted at trial. Leffel explained to police that she had gone to Cleveland

7

three times to purchase drugs. She bought enough for her personal use and extra to sell. She denied selling Andrus drugs on the night in question. She initially told police that she and Spurlock just went to visit, and they had no drugs with them. To explain away the texts about Andrus robbing them, Leffel told police that he stole money from her wallet. Leffel also changes her story. At the conclusion of her police interview, she admits that the women had drugs with them in Andrus' condo, but they never intended to sell him any. Instead, she explains that he had his own bag of drugs and that he also stole their drugs and money.

{¶37} Leffel first argues that there was no evidence before the jury to establish that she voluntarily supplied Andrus with drugs; instead she claims she established that he robbed her and took the drugs from her against her will. We disagree.

{¶38} Spurlock's testimony and the corresponding messages on Andrus' phone establish that the two women drove to his condo to sell him heroin and that upon arriving, Leffel delivered the heroin to him, but did not get paid. Andrus was home alone and locked inside. After receiving the drugs, he messaged Spurlock complaining about the quantity of drugs. Thereafter, his messages stopped even though the women continued to text him. Andrus was found dead the next morning. The toxicology report showed he had lethal levels of fentanyl and morphine, or broken-down heroin, in his blood. Heroin is often mixed with fentanyl.

{¶39} The evidence establishes that Leffel knowingly delivered heroin to Andrus, who was locked in his condo and drug sick. After Leffel left, Andrus used the heroin, overdosed, and died as a result. Thus, a jury could reasonably find that Leffel knowingly furnished Andrus with the heroin, and his use of the drug proximately resulted in his death.

8

And death by overdose is a foreseeable consequence of heroin use and consequently, a foreseeable result or should be a foreseeable result of furnishing another with drugs. *State v. Carpenter*, 3rd Dist. Seneca No. 13-18-16, 2019-Ohio-58, __ N.E.3d __, ¶63; *State v. Sabo*, 3d Dist. Union No. 14-09-33, 2010-Ohio-1261, 2010 WL 1173088, ¶25; *State v. Losey*, 23 Ohio App.3d 93, 95, 491 N.E.2d 379 (10th Dist.1985) (finding that death reasonably "could be anticipated by an ordinarily prudent person as likely to result under these or similar circumstances.").

**{¶40}** And contrary to Leffel's argument, the jury did not lose its way upon believing Spurlock's trial testimony. Her criminal history and prior versions were before the jury for its consideration, as the trier of fact. Accordingly, Leffel's first and second assigned errors lack merit and are overruled.

**{¶41}** Leffel's third assignment contends the trial court abused its discretion upon imposing the maximum sentence and claims the court erroneously imposed a harsher punishment on Leffel than Spurlock because Leffel chose to go to trial. We disagree.

**{¶42}** First, Leffel's argument improperly states that she received the maximum penalty for her conviction. The applicable maximum prison term for a violation of R.C. 2903.04(A) is 11 years, not ten. R.C. 2929.14(A)(1).

**{¶43}** Moreover, there is no right to parity in sentencing and "'no requirement that co-defendants receive equal sentences[,]' and as such, a defendant cannot challenge his sentence because it is disproportionate from that of his codefendant's." *State v. Sankey*, 11th Dist. Ashtabula No. 2017-A-0080, 2018-Ohio-2677, ¶10, quoting *State v. Lloyd*, 11th Dist. Lake No. 2002-L-069, 2003-Ohio-6417, ¶21. "Instead, trial courts have discretion in imposing a prison term within the statutory range and are required to assess the

9

applicable sentencing factors upon imposing a defendant's sentence. R.C. 2929.12(A)."

*Id.*

**{¶44}** Finally, our review of sentencing issues is dictated by R.C. 2953.08(G)(2), which states:

**{¶45}** "(2) The court hearing an appeal under division (A), (B), or (C) of this section shall review the record, including the findings underlying the sentence or modification given by the sentencing court.

**{¶46}** "The appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing. *The appellate court's standard for review is not whether the sentencing court abused its discretion.* The appellate court may take any action authorized by this division *if it clearly and convincingly finds either of the following*:

**{¶47}** "(a) That the record does not support the sentencing court's findings under division (B) or (D) of section 2929.13, division (B)(2)(e) or (C)(4) of section 2929.14, or division (I) of section 2929.20 of the Revised Code, whichever, if any, is relevant;

**{¶48}** "(b) That the sentence is otherwise contrary to law." (Emphasis added.)

**{¶49}** Here, the trial court imposed a ten-year sentence, which is on the high-end of the sentencing range. But upon reviewing the sentencing factors, the trial court noted that Leffel has a lengthy criminal history, including one juvenile adjudication and several convictions while an adult. The court also emphasized that Leffel committed the instant offense while on community control for a felony conviction in an adjacent county and that Leffel showed a complete lack of remorse for her actions that caused the loss of Andrus' life. Leffel does not challenge the court's statements in this regard.

10

**{¶50}** Accordingly, we do not clearly and convincingly find that her sentence is contrary to law or unsupported by the record. Thus, her third assignment lacks merit.

**{¶51}** Leffel's fourth and final argument claims that the trial court committed plain error upon instructing the jury because a recitation of 2 CR OJI 409.17 is required when an accomplice testifies against a defendant.

**{¶52}** Because Leffel did not object at trial on this basis, she waives all but plain error. *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978). "Notice of plain error under Crim.R. 52(B) is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." *Id.* at paragraph three of the syllabus. Plain error occurs when but for the error, the outcome of the trial clearly would have been otherwise, and errors of this magnitude may be recognized even when an appellant does not object at trial. *Id.* at 96-97; Crim.R. 52(B).

**{¶53}** Regardless, a verbatim recitation of applicable jury instructions are not required at trial. To the contrary, the court's instructions to the jury should communicate the law and controlling legal principles pertinent to the case. *State v. Harris*, 8th Dist. Cuyahoga No. 104329, 2017-Ohio-2751, 90 N.E.3d 342, ¶65, *appeal not allowed,* 150 Ohio St.3d 1453, 2017-Ohio-8136, 83 N.E.3d 939.

**{¶54}** The trial court instructed the jury as follows:

**{¶55}** "The testimony of an accomplice does not become inadmissible, because of her complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect her credibility and make her testimony subject to grave suspicion and require that it be weighed with great caution."

{¶56} And elsewhere, instructed "You are, as I have said to you earlier, the sole judges of the facts." The trial court instructions, therefore, communicate the law and legal principles pertinent to weighing accomplice testimony with great caution. R.C. 2923.03 (D).

{¶57} Accordingly, her fourth assigned error lacks merit.

{¶58} The trial court's decision is affirmed in full.


TIMOTHY P. CANNON, J.,

MARY JANE TRAPP, J.,

concur.