[Cite as *State v. White*, 2023-Ohio-4092.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

| | |
|---|---|
| STATE OF OHIO, | CASE NO. 2022-A-0089 |
| Plaintiff-Appellee, | |
| - vs - | Criminal Appeal from the Court of Common Pleas |
| MARVIN J. WHITE, a.k.a. MARVIN JACKSON WHITE, | Trial Court No. 2019 CR 00703 |
| Defendant-Appellant. | |

# **O P I N I O N**

Decided: November 13, 2023
Judgment: Affirmed in part, reversed in part, and remanded

*Colleen M. O'Toole*, Ashtabula County Prosecutor, *Michael J. Bodyke*, Assistant Prosecutor, and *Christopher R. Fortunato*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Plaintiff-Appellee).

*Edward F. Borkowski, Jr.*, P.O. Box 609151, Cleveland, OH 44109 (For Defendant-Appellant).

JOHN J. EKLUND, P.J.

{¶1} Appellant, Marvin White, appeals his convictions from the Ashtabula County Court of Common Pleas. Following a jury trial, appellant was convicted on five counts: Involuntary Manslaughter, a first-degree felony in violation of R.C. 2903.04; Trafficking in a Fentanyl-Related Compound, a fifth-degree felony in violation of R.C. 2925.03(A)(1); Aggravated Possession of Drugs, a third-degree felony in violation of R.C. 2925.11(A); Trafficking in a Fentanyl-Related Compound, a fourth-degree felony in violation of R.C.

2925.03(A)(2); and Possessing Criminal Tools, a fifth-degree felony in violation of R.C. 2923.24(A).

{¶2} Appellant has raised three assignments of error arguing his convictions were not supported by sufficient evidence, are against the manifest weight of the evidence, and that his sentence is contrary to law.

{¶3} Having reviewed the record and the applicable caselaw, appellant's conviction on Count 1 for Involuntary Manslaughter with a predicate offense of Corrupting Another with Drugs is not supported by sufficient evidence. Although appellant did furnish drugs to a third-party, who provided those drugs to the victim, appellant did not knowingly furnish the victim with drugs. However, the State presented competent credible evidence for each of appellant's remaining convictions. Next, the trial court's sentence on Count 9 was contrary to law as the 36-month sentence exceeded the statutory maximum sentence for a fourth-degree felony. However, appellant's sentence was not otherwise contrary to law, the trial court considered the purposes and principles of felony sentencing under R.C. 2929.11 and weighed the seriousness and recidivism factors under R.C. 2929.12. Further, the trial court made the necessary findings to impose consecutive sentences under R.C. 2929.14

{¶4} Therefore, the judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

**Substantive and Procedural History**

{¶5} On January 29, 2020, appellant was indicted on 11 counts: Count 1: Involuntary Manslaughter with a predicate offense of Corrupting Another with Drugs, a

2

first-degree felony in violation of R.C. 2903.04; Count 2: Involuntary Manslaughter with a predicate offense of Trafficking in a Fentanyl-related compound, a first-degree felony in violation of R.C. 2903.04; Count 3: Corrupting Another with Drugs, a second-degree felony in violation of R.C. 2925.02(A)(3); Count 4: Trafficking in a Fentanyl-Related Compound; a fifth-degree felony in violation of R.C. 2925.03(A)(1); Count 5: Aggravated Trafficking in Drugs, a fourth-degree felony in violation of R.C. 2925.03(A)(1); Count 6: Trafficking in a Fentanyl-Related Compound, a fifth-degree felony in violation of R.C. 2925.03(A)(1); Count 7: Aggravated Trafficking in Drugs, a third-degree felony in violation of R.C. 2925.03(A)(2); Count 8: Aggravated Possession of Drugs, a third-degree felony in violation of R.C. 2925.11(A); Count 9: Trafficking in a Fentanyl-Related Compound, a fourth-degree felony in violation of R.C. 2925.03(A)(2); Count 10: Possession of a Fentanyl-Related Compound, a fifth-degree felony in violation of R.C. 2925.11(A); and Count 11: Possessing Criminal Tools, a fifth-degree felony in violation of R.C. 2923.24(A).

**{¶6}** Appellant pled not guilty, and the matter proceeded to jury trial.

**{¶7}** Jury trial began on September 27, 2022. On the day of trial, the State moved to dismiss Count 5. The State and appellant each called ten witnesses. The following summarizes the testimony and evidence:

**{¶8}** Edgar Johnson testified that he lived on West 9th Street in Ashtabula, Ohio. He said that on August 31, 2019, he lived at that residence with his sister Thelma Paul and a friend, Travis Rockwell. Thelma was 58 years old, disabled, and in chronic pain. Edgar knew Travis because he had dated Travis' mother, Danielle Rockwell.

**{¶9}** Edgar said that both he and Thelma were drug users. On August 31, 2019, Thelma was complaining her back was bothering her. Edgard tried to take her to the

3

Case No. 2022-A-0089

hospital, but she refused. Someone from the energy company came to the house and Edgar talked to him outside for approximately two hours. When he came back inside, he found Thelma lying on the bed not moving or breathing. Edgar called 911 and Thelma was transported to the hospital where she was pronounced dead as the result of an overdose. Edgar said that he knew of appellant but had never seen him at the house on West 9th.

{¶10} Brandon Zukoski, a police officer with the Ashtabula City Police Department, testified that he responded to the Ashtabula Medical Center for an overdose and saw Thelma. Zukoski recognized her but could not put a name to the face. He continued his investigation by going to the 9th Street residence. He went into Thelma's bedroom and noted a lot of clutter, drugs, and drug paraphernalia such as "snort straws, razor blades, folded paper * * * white powder residue, * * * two lines of suspected meth * * * [and] a fold paper that had a brown packed powder on it." He said that the drugs he recovered were tested and found to be methamphetamine, heroin, and carfentanil.

{¶11} Danielle Rockwell testified and said she knew appellant because he was married into her husband's family and she also knew him as a drug dealer. She said on August 31, 2019, her son Travis contacted her asking for appellant's phone number. Danielle said Travis was using heroin at the time and appellant was the person who supplied her with heroin when she was using drugs. Danielle called appellant and told him Travis wanted to talk to him. Appellant picked up Danielle in a maroon Cadillac and went to Travis' West 9th Street residence. Travis left $20.00 for the heroin on the porch. Danielle said she left heroin on the porch then collected the money and gave it to appellant.

4

{¶12} Danielle said she later learned of Thelma's passing and that a police detective contacted her about the matter. She told the police about appellant dealing drugs from his residence on East 17th Street. She said she agreed to conduct a drug buy from appellant.

{¶13} On September 2, 2023, she arranged to meet appellant to buy heroin and the investigators provided her with a recording device to capture the transaction. Danielle went to appellant's house and purchased $20.00 worth of heroin. However, although appellant gave Danielle the heroin, she forgot to give him the $20.00.

{¶14} Danielle had been charged with Involuntary Manslaughter, Corrupting Another with Drugs, Trafficking in a Fentanyl-Related Compound, Aggravated Trafficking in Drugs, and Tampering with Evidence. She took a plea deal to a reduced charge of Attempted Corrupting Another with Drugs and Trafficking in Drugs with a sentence of 18 months prison in exchange for her truthful testimony against appellant. She also admitted to having prior forgery and theft convictions.

{¶15} Travis Rockwell testified that he lived at the West 9th Street residence with Thelma and Edgar in August 2019. He said that on August 31, he called his mom, Danielle, to help him buy heroin. Travis said he had recently bought a new phone and no longer had appellant's number. He said that appellant and his mom came to the house in a red Cadillac. Travis said he went to the car to pick up the drugs and that he paid appellant $30.00 for the heroin. Travis explained that Thelma contributed $20.00 to the drug purchase and he paid $10.00 toward the purchase. Earlier in the day, Travis had texted Thelma asking for $20.00 to pay toward her share.

{¶16} Travis went back into the house and gave Thelma her share of the heroin and he went into the bathroom and took the drugs. He said that he used a needle to get high, while Thelma would snort the drugs. When he came out of the bathroom, Thelma had already overdosed, and Edgar was administering CPR.

{¶17} When the Ashtabula Police arrived, Travis provided a statement. He was charged for his involvement and took a plea deal to Attempted Corrupting Another with Drugs and Trafficking in Drugs with a recommended sentence of 18 months in exchange for truthful testimony in appellant's case. When pressed about whether he went out to the car to take the drugs from appellant or if Danielle came up to the house to drop them, Travis said he was unsure. However, he said that the drugs ultimately came from appellant.

{¶18} Lieutenant Michael Palinkas, with the Ashtabula City Police Department, and Detective Thomas Perry, previously of Ashtabula City Police Department, testified as to their investigation of the case. Perry said that on August 31, 2019, he interviewed Travis and Edgar about their involvement in Thelma's death. He also spoke to Danielle via phone and later in person on September 2. Perry arranged for Danielle to conduct the controlled drug buy from appellant.

{¶19} On September 3, 2019, the Ashtabula Police executed a search warrant at appellant's East 17th Street residence based on Danielle's controlled drug buy. Appellant was stopped in his vehicle at the East 17th Street address and found methamphetamine and $663.00 in currency. At the residence, officers recovered suspected drugs later identified as heroin on a water tank, three digital scales, two orange pills later identified as Buprenorphine tablets, and multiple cell phones.

6

**{¶20}** Appellant agreed to give Palinkas a statement and gave consent for officers to search his primary residence located at West 30th Street. When officers arrived at the West 30th Street residence, appellant spoke to his wife and told her that he had "done some very bad things." Officers recovered $3,000.00 and a handgun in a safe. Appellant had the key to the safe on his key ring while appellant's wife did not have a key for the safe. Officers found a total of 47 firearms.

**{¶21}** Dr. Luigino Apollonio, the chief toxicologist for the Cuyahoga County Examiner's Office, testified that he performed toxicology testing on a specimen of blood from Thelma. He performed a comprehensive toxicology screen and determined she had fentanyl, carfentinil, morphine, and methamphetamine in her system.

**{¶22}** Dr. Pamela Lancaster, the Ashtabula County Coroner, determined Thelma's death was as a result of accidental overdose of a combination of fentanyl and carfentinil.

**{¶23}** Shay Smith, a forensic scientist at the Bureau of Criminal Investigation (BCI), analyzed suspected drugs and found the samples to be methamphetamine, a combination of heroin and carfentanil, and carfentanil. All tested samples were under 0.1 gram.

**{¶24}** Erin Miller, a forensic scientist at BCI, analyzed suspected drugs and found the samples to be 3.03 grams of methamphetamine, two Buprenorphine tablets, and a 1.19 gram combination of heroin, fentanyl, and carfentanil.

**{¶25}** The State rested and appellant called the following witnesses:

**{¶26}** Daniel Mulholland testified that he rents a house on East 17th Street from appellant. On September 3, 2019, he said that he went to pay his monthly rent to appellant

7

and found him sitting on the couch unable to get up and move around. He also said appellant owns a white Cadillac. He said appellant owns a red vehicle, but that it was in the driveway and inoperable at the time.

{¶27} Annette White, appellant's wife, said she was present when the officer searched their West 30th Street residence. She said that "98 percent" of the guns seized were hers and that she acquired them through an inheritance. She said she had never seen appellant sell drugs from the house. However, she said that she worked during the day and did not know specifically what appellant did while she was at work. She also said she only went to the East 17th Street residence once a month.

{¶28} Jerry Henry, Thelma's son, testified that he lived at the West 9th Street residence but moved out a few weeks before Thelma died. He said that he had never seen appellant at the house and had never seen appellant sell drugs to Danielle or Travis. However, he said he had only met appellant two days ago. He also never saw anyone sell or give drugs at the residence. He said that he did see Thelma, Danielle, and Travis using drugs at the house.

{¶29} Raymond Hall testified that he is friends with appellant and said that most of the firearms in appellant's house belonged to his wife. He helped to pick them up in the 1980s after Annette inherited them. Elizabeth Hall, Raymond's wife, said she also went to help pick up Annette's firearms when she inherited them. She said she had never seen appellant sell drugs.

{¶30} Tiffany Noble testified that she worked for appellant at his antique shop. She said that she had seen appellant selling drugs out of the antique shop while she

8

worked there. She said appellant also sold her cocaine and heroin. Noble testified that appellant sold her a car for $3,000.00 in August 2019.

{¶31} Lester Johnson lived in the upstairs unit of the West 9th Street residence in August 2019. Johnson is Thelma's brother. He said he has known appellant for 25 years. Johnson said he was at home on August 31, 2019, but he did not see appellant come to the address.

{¶32} Andrew Sawan, a forensic scientist with BCI, testified that he performed DNA analysis on a paper bindle and a plastic bag. He said both items contained DNA profiles consistent with Thelma as well as DNA from a male with an insufficient sample for comparison to a standard. The plastic bag also contained DNA consistent with another unidentified female. Danielle's DNA standard was not available for comparison.

{¶33} Appellant testified in his own defense. He said he is retired and became addicted to opioids after receiving cancer treatment. He claimed he was no longer using heroin in August 2019 but said he was still using methamphetamine. He said that he was circumcised on August 29, 2019, and was unable to walk and stayed in bed or on the couch. He said he could not drive for four or five days. On August 31, he said he tried to get up a few times but was unable to do so. When he tried, he said he ripped stitches.

{¶34} Appellant denied leaving the house on August 31 and denied seeing Danielle or Travis. He denied knowing Thelma.

{¶35} Appellant denied ever selling drugs to Danielle or Travis. Appellant said he owed Danielle and gave her the heroin when she conducted the controlled buy. He said he was still unable to drive on September 2 during the controlled drug buy and that

9

someone drove him to the East 17th Street address. He said he was driving on September 3 when he was arrested.

{¶36} He said the $3000.00 in the safe came from selling a car to Tiffany and $500.00 of the $663.00 found on him when he was arrested came from Daniel paying rent. He said that his red Cadillac was not operable on August 31, and he was driving a white Cadillac at the time.

{¶37} The jury found appellant not guilty on Count 7 and guilty as to the remaining Counts.

{¶38} On October 27, 2022, the trial court sentenced appellant. Counts 1, 2, 3, and 4 were merged as allied offenses of similar import and the trial court sentenced appellant on Count 1. Similarly, Counts 9 and 10 were merged and the trial court sentenced appellant on Count 9. Therefore, appellant was sentenced on Counts 1, 6, 8, 9, and 11. The trial court stated that it considered the purposes and principles of felony sentencing under R.C. 2929.11 and R.C. 2929.12. The court concluded appellant's conduct was more serious under R.C. 2929.12 because appellant's crimes resulted in the death of another.

{¶39} The trial court imposed an 11 to 16 and one-half year indefinite sentence on Count 1, a 12-month sentence on Count 6, a 36-month sentence on Count 8, a 36-month sentence on Count 9, and a 12-month sentence on Count 11. The trial court ordered the sentences to be run consecutively to each other for a total of 19 to 24 and one-half years imprisonment. The court found consecutive sentences were appropriate because the offenses were committed on three separate days and at least two of the multiple offenses were part of one or more courses of conduct and the harm caused was

10

so great that no single prison term adequately reflected the seriousness of appellant's conduct.

{¶40} Appellant timely appealed raising three assignments of error.

**Assignments of Error and Analysis**

{¶41} Appellant's first and second assignments of error state:

{¶42} "[1.] APPELLANT'S CONVICTIONS WERE UNSUPPORTED BY SUFFICIENT EVIDENCE."

{¶43} "[2.] APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

{¶44} We address appellant's first two assignments together.

{¶45} "'Sufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins*, 78 9 Case No. 2022-A-0028 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997), citing Black's Law Dictionary (6 Ed.1990) 1433. The appellate court's standard of review for sufficiency of evidence is to determine, after viewing the evidence in a light most favorable to the prosecution, whether a rational trier of fact could find the essential elements of the crime proven beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶46} When evaluating the sufficiency of the evidence, we do not consider its credibility or effect in inducing belief. *Thompkins* at 387. Rather, we decide whether, if believed, the evidence can sustain the verdict as a matter of law. *Id.* This naturally entails

11

a review of the elements of the charged offense and a review of the State's evidence. *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶ 13.

**{¶47}** When evaluating the weight of the evidence, we review whether the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other indicated clearly that the party having the burden of proof was entitled to a verdict in its favor, if, on weighing the evidence in their minds, the greater amount of credible evidence sustained the issue which is to be established before them. "Weight is not a question of mathematics but depends on its effect in inducing belief." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). Whereas sufficiency relates to the evidence's adequacy, weight of the evidence relates the evidence's persuasiveness. *Id.*

**{¶48}** The trier of fact is the sole judge of the weight of the evidence and the credibility of the witnesses. *State v. Landingham*, 11th Dist. Lake No. 2020-L-103, 2021-Ohio-4258, ¶ 22, quoting *State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964). The trier of fact may believe or disbelieve any witness in whole or in part, considering the demeanor of the witness and the manner in which a witness testifies, the interest, if any, of the outcome of the case and the connection with the prosecution or the defendant. *Id.*, quoting *Antil* at 67. This court, engaging in the limited weighing of the evidence introduced at trial, is deferential to the weight and factual findings made by the factfinder. *State v. Brown*, 11th Dist. Trumbull No. 2002-T-0077, 2003-Ohio-7183, ¶ 52, citing *Thompkins* at 390 and *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212 (1967), paragraph two of the syllabus. The reviewing court "determines whether * * * the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed,

12

and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

**{¶49}** A finding that a judgment is supported by the manifest weight of the evidence necessarily means the judgment is supported by sufficient evidence. *State v. Arcaro*, 11th Dist. Ashtabula No. 2012-A-0028, 2013-Ohio-1842, ¶ 32.

**{¶50}** Appellant was convicted on Counts 1, 6, 8, 9, and 11.

**{¶51}** Appellant acknowledges that there could be sufficient evidence to demonstrate he furnished drugs to Travis. However, he argues that there was not sufficient evidence to demonstrate that he knowingly furnished drugs to Thelma. Therefore, he argues his conviction for Count 1 is not supported by sufficient evidence.

**{¶52}** R.C. 2903.04(A), Involuntary Manslaughter, provides: "No person shall cause the death of another or the unlawful termination of another's pregnancy as a proximate result of the offender's committing or attempting to commit a felony." "Involuntary manslaughter is a crime of transferred intent." *State v. Leffel*, 11th Dist. Ashtabula No. 2017-A-0085, 2019-Ohio-1840, ¶ 17, citing *Stanley v. Turner*, 6 F.3d 399, 402 (6th Cir.1993), *citing State v. Losey,* 23 Ohio App.3d 93, 491 N.E.2d 379 (1985). "Thus, the requisite culpable mental state is the same as the culpable mental state of the underlying offense." *Id.* Further, "[t]he possibility of overdose is a reasonably foreseeable consequence of the sale of heroin." *State v. Patterson*, 11th Dist. Trumbull No. 2013-T-0062, 2015-Ohio-4423, ¶ 91.

**{¶53}** Appellant's conviction for Involuntary Manslaughter has a predicate offense of R.C. 2925.02(A)(3), Corrupting Another with Drugs, which provides that no person shall

13

knowingly "[b]y any means, administer or furnish to another or induce or cause another to use a controlled substance, and thereby cause serious physical harm to the other person * * *." A person acts "knowingly" when, regardless of purpose, "the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶54} The trial court's jury instructions defined "furnished" as "provided, supplied, or give[n] access to." In *Patterson,* we addressed the question of whether there was sufficient evidence that the defendant knew he was giving the victim, Sheesly, access to heroin through Stevens, who facilitated the purchase. *Id.* at ¶ 85. There was testimony that Stevens told Patterson that Sheesly was the one purchasing the drugs. *Id.* at ¶ 17. There was also testimony that Sheesly handed Stevens the money for the drugs and Stevens then gave the money to the defendant in exchange for the drugs. *Id.* "Patterson sold heroin that he knew was being purchased with Sheesley's money and so he could reasonably assume that she would use the heroin." *Id.* at ¶ 92. Under these circumstances, we concluded "[i]t does not matter if the heroin was sold or delivered directly to Stevens, provided that the sale gave Sheesley access to it." *Id.* at ¶ 86.

{¶55} In *State v. Price*, 2019-Ohio-1642, 135 N.E.3d 1093 (8th Dist.), the Eighth District held that there was sufficient evidence to prove that the defendant furnished the drugs to the victim when he sold the drugs to a third party. *Id.* at ¶ 48-51. However, the third party testified that she told the defendant that the drugs were for someone else and the defendant and the victim were in her apartment at the same time during the transaction. *Id.* at ¶ 51.

14

Case No. 2022-A-0089

{¶56} Other Ohio appellate districts concluded that a drug dealer cannot be found guilty of corrupting another with drugs under R.C. 2925.02(A)(3) "whenever the ultimate user suffers serious physical harm[.]" *E.g., State v. Ridley*, 6th Dist. Lucas No. L-18-1184, 2020-Ohio-402, ¶ 33. The statute "explicitly limits" the other person suffering serious physical harm "to the person to whom the drugs were furnished. Thus, appellant must knowingly provide the drugs to the person who ultimately suffered the serious physical harm." *Id.* In *Ridley*, there was no testimony or evidence to demonstrate Ridley was "aware that [the victim] would receive the drugs." *Id.* at ¶ 34. Therefore, the court found there was insufficient evidence to sustain the conviction. *Id.*

{¶57} The State, for its part, argues knowledge of illegal goods on one's property is sufficient to show constructive possession. Therefore, a drug dealer delivering fentanyl to a home should not be limited to liability for the individual that made the transaction but should be held criminally liable for any person he gives constructive possession to. This argument is not persuasive and does not overcome the statutory requirement that appellant knowingly furnish a controlled substance to another and thereby cause serious physical harm to the other person.

{¶58} The State further argues that because Travis testified that appellant regularly sold drugs at the West 17th Street address and that Travis often bought drugs for himself and Thelma, there is circumstantial evidence that appellant knew he was furnishing drugs to Thelma. This argument relies on imputing to appellant Travis' knowledge of what he would do with the drugs. While the basic tenants of felony murder liability do permit imputing the mens rea of the underlying felony to the participant responsible for the killing, the same sort of imputation is not possible for the underlying

15

Case No. 2022-A-0089

predicate offense. *See State v. Nolan,* 141 Ohio St.3d 454, 2014-Ohio-4800, 25 N.E.3d 1016, ¶ 9 ("Though intent to commit the predicate felony is required, intent to kill is not."). Involuntary manslaughter is a crime of transferred intent. *Leffel*, 2019-Ohio-1840, ¶ 17. That means the State must prove the culpable mental state of the underlying offense – in this case, corrupting another with drugs. The State failed to prove that. The only way for the State to satisfy its burden of proof for the knowledge element of Involuntary Manslaughter is to prove the knowledge element of Corrupting Another with Drugs. *See id.* The State failed to prove that appellant was aware his conduct would result in furnishing drugs to Thelma. We cannot impute that knowledge to him through Travis, who did know that he would ultimately furnish the drugs appellant sold to him to Thelma.

{¶59} The facts before us differ substantially from *Patterson* and *Price* where the defendants had knowledge they were furnishing the drugs to the ultimate victim despite providing the controlled substance to a third-party. Here, taking the evidence in a light most favorable to the State, there is no basis to believe that appellant knew he was furnishing drugs to anyone other than Travis. Indeed, there is no evidence that appellant knew Thelma would use the drugs, that Thelma was inside the house, or even that appellant knew who Thelma was. Appellant certainly knew he was furnishing drugs to Travis, but nothing more.

{¶60} Therefore, there is insufficient evidence to sustain appellant's conviction under Count 1 because the State failed to prove the knowingly element of the predicate offense of Corrupting Another with Drugs.

{¶61} At sentencing, the State elected to sentence appellant on Count 1 and the trial court sentenced him accordingly. However, the jury also found appellant guilty of

16

Involuntary Manslaughter in violation of R.C. 2903.04 on Count 2 with a predicate offense of Trafficking in a Fentanyl-Related Compound, in violation of R.C. 2925.03(A)(1). The State's election to proceed to sentencing on Count 1 did not eliminate the jury's verdict of guilty on Count 2. *See State v. Payne*, 11th Dist. Ashtabula No. 2014-A-0001, 2014-Ohio-4304, ¶ 26. "It therefore follows that when a disputed conviction is premised upon insufficient evidence and is subsequently vacated, the reversal of that conviction does not function to vacate or eliminate a jury's verdict for crimes the defendant was found guilty, but of which a defendant was not convicted due to the merger exercise." *Id.*

{¶62} Therefore, even though we reverse and vacate for appellant's Involuntary Manslaughter conviction under Count 1 with a predicate offense of Corrupting Another with Drugs, upon remand the trial court may proceed to sentence appellant and enter conviction for Count 2, Involuntary Manslaughter with a predicate offense of Trafficking in a Fentanyl-Related Compound.

{¶63} Until the trial court enters convictions on that count, no final appealable order exists, and we do not have the jurisdiction to address the weight or sufficiency of the evidence on that count. *Id.* at ¶ 27.

{¶64} Next, we address Count 6, Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(1). Count 6 arose from Danielle's September 2 controlled drug buy.

{¶65} R.C. 2925.03(A)(1) provides that no person shall knowingly "[s]ell or offer to sell a controlled substance or a controlled substance analog[.]" The trial court's jury instruction defined sale to include "delivery, barter, exchange, transfer, or gift, or offer

17

thereof, and each such transaction made by any person, whether a principal, proprietor, agent, servant, or employee."

**{¶66}** BCI tested and weighed the purchase and found it to be 0.1 gram of carfentanil. Appellant's own testimony admitted that he gave Danielle the heroin when she conducted the controlled buy. This admission provided credible evidence which if believed would entitle the State to its verdict.

**{¶67}** Count 8, Aggravated Possession of Drugs, related to the 3.03 grams of methamphetamine Detective Palinkas found on appellant while executing the September 3 search warrant. The State clearly established a violation of R.C. 2925.11 through Palinkas' testimony that appellant was in possession of methamphetamine, which was weighed and tested by BCI.

**{¶68}** Count 9, Trafficking in a Fentanyl-Related Compound in violation of R.C. 2925.03(A)(2), arose from the 1.19 grams of fentanyl, heroin, carfentanil, and/or fentanyl pharmacophore found on the hot water heater at appellant's East 17th Street residence. 2925.03(A)(2) provides that no person shall knowingly "[p]repare for shipment, ship, transport, deliver, prepare for distribution, or distribute a controlled substance or a controlled substance analog * * *." Testimony supported the conclusion that appellant was operating the East 17th Street residence as a drug house to both sell drugs directly from the residence and to prepare drugs for transport or distribution out of the residence. The Fentanyl-related compound found at the house was weighed and tested by BCI. Danielle had purchased carfentanil from the residence the day before and officers recovered three digital scales. Appellant's conviction under Count 9 is supported by the manifest weight of the evidence.

18

{¶69} Count 11, Possessing Criminal Tools in violation of R.C. 2923.24, related to appellant's use of digital scales under circumstances indicating the use was intended for the commission of a felony. The scales were recovered during the search of his East 17th Street residence. During Danielle's controlled drug buy at the residence, the recording she took showed appellant using a scale to weigh out the heroin she bought. The State established that appellant was using these digital scales for the commission of a felony.

{¶70} Accordingly, appellant's first and second assignments of error have some merit. Appellant's argument that Count 1 was not supported by sufficient evidence is well-taken. However, appellant's convictions for the remaining counts are neither against the manifest weight of the evidence, nor based upon insufficient evidence. *See State v. Arcaro*, 2013-Ohio-1842, ¶ 32.

{¶71} Appellant's third assignment of error states:

{¶72} "[3.] APPELLANT'S SENTENCE IS CONTRARY TO LAW."

{¶73} Appellant argues the trial court incorrectly imposed a 36-month sentence on Count 9, which was contrary to law because Count 9 was a fourth-degree felony with a maximum possible sentence of 18-months. The State has conceded error on this issue and agrees the sentence on Count 9 is contrary to law. Therefore, we must vacate his sentence and remand for the trial court to resentence appellant to a term of imprisonment within the given statutory range. *See State v. Kirkpatrick*, 11th Dist. Trumbull No. 2009-T-0007, 2009-Ohio-6519, ¶ 29.

{¶74} Appellant next argues that the trial court's imposition of consecutive sentences was contrary to law.

19

Case No. 2022-A-0089

**{¶75}** R.C. 2953.08(G) "requires that the appellate court vacate or modify the order if, upon review of the record, the court is left with a firm belief or conviction that the [consecutive sentence] findings are not supported by the evidence." *State v. Gwynne*, Slip Opinion No. 2022-Ohio-4607, ¶ 27. There are three ways an appellant can challenge consecutive sentences on appeal. *State v. Lewis*, 11th Dist. Lake No. 2001-L-060, 2002-Ohio-3373, ¶ 6. First, the appellant may argue that the sentencing court failed to state the findings for consecutive sentences that R.C. 2929.14(C)(4) requires. *State v. Torres*, 11th Dist. Lake No. 201-L122, 2003-Ohio-1878, ¶ 18; R.C. 2953.08(G)(1). Second, the appellant may argue that the record clearly and convincingly does not support the findings the sentencing court made to justify consecutive sentences. *State v. Lewis*, at ¶ 7; R.C. 2953.08(G)(2)(a). Third, the appellant may argue that his sentence is clearly and convincingly otherwise contrary to law. R.C. 2953.08(G)(2)(b).

**{¶76}** R.C. 2929.14(C)(4) provides:

If multiple prison terms are imposed on an offender for convictions of multiple offenses, the court may require the offender to serve the prison terms consecutively if the court finds that the consecutive service is necessary to protect the public from future crime or to punish the offender and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of the following:

(a) The offender committed one or more of the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under postrelease control for a prior offense.

(b) At least two of the multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of the offender's conduct.

20

(c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.

**{¶77}** In making its findings for consecutive sentences, the sentencing court is required to engage in the analysis for consecutive sentencing and specify the statutory criteria warranting its decision. *State v. Bonnell*, 140 Ohio St. 3d 209, 2014-Ohio-3177, 16 N.E.3d 659, at ¶ 26. While the sentencing court is not required to state exact reasons supporting its findings, the record must contain a clear basis upon which a reviewing court can determine that the sentencing court's findings for imposing consecutive sentences are supported by the record. *Id.* at ¶ 27-28.

**{¶78}** Here, appellant concedes that the trial court made the required findings for consecutive sentences in its judgment entry but failed to make the necessary findings during the sentencing hearing. We disagree. At the sentencing hearing, the trial court found consecutive sentences were appropriate because the offenses were committed on three separate days and at least two of the multiple offenses were part of one or more courses of conduct and the harm caused was so great that no single prison term adequately reflected the seriousness of appellant's conduct.

**{¶79}** Appellant's next argument against his consecutive sentence suggests that the record does not support it because appellant is 71 years old with no prior criminal history, rendering sentence excessive.

**{¶80}** However, because this case must be remanded for resentencing on Counts 1 and 9 we can conclude at this stage that the trial court did make the necessary consecutive sentencing findings. We do not pass judgments absent a complete record on the issue we are asked to decide.

21

**{¶81}** Finally, appellant argues the trial court did not properly consider the purposes and principles of felony sentencing under R.C. 2929.11 and did not properly weigh the seriousness and recidivism factors under R.C. 2929.12. Appellant relies on *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231 to argue that his sentences were not supported by the record pursuant to R.C. 2953.08(G)(2). He argues that his sentences are contrary to law because the trial court "did not properly consider and weigh the purposes and principles of felony sentencing * * *."

**{¶82}** However, division (G)(2)(a) of that statute only applies to challenges to sentences imposed under R.C. 2929.13(B) or (D), R.C. 2929.14(B)(2)(e) or (C)(4), and R.C. 2929.20(I). Appellant's R.C. 2929.11 and R.C. 2929.12 challenges are not proper under R.C. 2953.08. *See State v. Shannon*, 11th Dist. Trumbull No. 2020-T-0020, 2021-Ohio-789, ¶ 7.

**{¶83}** We reiterate our prior holdings, grounded in *State v. Jones*, 163 Ohio St.3d 242, 2020-Ohio-6729, 169 N.E.2d 649, R.C. 2953.08(G)(2)(a) does not provide a basis for an appellate court to modify or vacate a sentence based on the lack of support in the record for the trial court's findings under R.C. 2929.11 and 2929.12. *Id.* at ¶ 27-29; e.*g., State v. Reffitt*, 11th Dist. Lake No. 2021-L-129, 2022- Ohio-3371; ¶ 17; *State v. Stevens*, 11th Dist. Lake No. 2021-L-105, 2022-Ohio-3781, ¶ 19; *State v. Pruitt*, 11th Dist. Trumbull No. 2021-T-0012, 2021-Ohio-3793, ¶ 10; *State v. Loparo*, 11th Dist. Lake No. 2020-L-120, 2021-Ohio-2179, ¶ 13; *State v. Mizicko*, 11th Dist. Trumbull No. 2021-T-0017, 2022-Ohio-262, ¶ 22; *State v. Potter*, 11th Dist. Lake No. 2021-L-053, 2021-Ohio-3485, ¶ 7. The fundamental premise of all the above precedents is that R.C. 2929.11 and R.C. 2929.12 are not statutes to which R.C. 2953.08(G)(2)(a) even refers. More fundamentally,

22

neither R.C. 2929.11 nor R.C. 2929.12 call for the sentencing court to even make "findings."

**{¶84}** Under *Jones*, an appellate court reviewing alleged error under R.C. 2929.11 and R.C. 2929.12 no longer evaluates whether those sentences are unsupported by the record. Instead, the court "must simply analyze whether the sentencing court's findings for those sentences are contrary to law." *Id.* at ¶ 11. *Jones* held that "legal dictionaries define 'contrary to law' as 'in violation of statute or legal regulations at a given time,' e.g., Black's Law Dictionary 328 (6th Ed. 1990)." *Id.* at ¶ 34. However, *Jones* held that the phrase "contrary to law" is not "equivalent" to an "appellate court's conclusions that the record does not support a sentence under R.C. 2929.11 or 2929.12." *Id.*

**{¶85}** Appellant concedes that his sentence (excepting Count 9) falls within the statutory range, but argues, contrary to *Jones*, that the court did not properly weigh the purposes and principles of felony sentencing in R.C. 2929.11(A) and did not properly assess the seriousness and recidivism factors of R.C. 2929.12. Appellant's argument fails because we may not independently weigh the evidence in the record and substitute our judgment for the trial court's. *Id.* at ¶ 42.

**{¶86}** Accordingly, appellant's third assignment of error has merit as to the trial court's 36-month sentence on Count 9, which was contrary to law because Count 9 was a fourth-degree felony with a maximum possible sentence of 18-months. Appellant's assignment of error is without merit as to appellant's remaining arguments and we do not decide his challenge to his aggregate consecutive sentence, the scope of which has not been determined.

Case No. 2022-A-0089

{¶87} For the foregoing reasons, the judgment of the Ashtabula County Court of Common Pleas is affirmed in part, reversed in part, and remanded. This matter is remanded to the trial court to vacate appellant's conviction for Involuntary Manslaughter on Count 1. The trial court shall conduct a new sentencing hearing and enter a conviction on the previously merged Count 2. Further, appellant's sentence under Count 9 is vacated and we remand for the trial court to resentence appellant to a term of imprisonment within the given statutory range.

MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.

Case No. 2022-A-0089